IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02736-RBJ

ESTATE OF FRANK M. EWING,

    Plaintiff,

v.

WAYNE EWING FILMS, INC.,

    Defendant,

_____

WAYNE EWING FILMS, INC., a Colorado corporation,

    Counter-Claimant,

v.

ESTATE OF FRANK M. EWING,

    Counter-Defendant,

_____

WAYNE EWING FILMS, INC., a Colorado corporation,

    Third-Party Plaintiff,

v.

JUDITH H. EWING, individually and as co-personal representative
of the Estate of Frank M. Ewing,
FRANCES EWING TENNERY, individually and as co-personal representative
of the Estate of Frank M. Ewing,
ROBERT W. LANG, an individual, and
ESTATE OF FRANK M. EWING,

    Third-Party Defendants.

ORDER

This case arises out of a larger dispute concerning the administration of the estate of Frank M. Ewing.  Because so many of the parties share the same last name, I will refer to them by their first names after fully introducing them.  The only exception is Robert Lang, to whom I will refer as Mr. Lang.

Frank Ewing died testate on September 16, 2013 at the age of 98.  His wife, Judith Ewing, and at least four children, including his son Wayne Ewing and his daughter Frances Ewing Tennery, survived him.  Judith and Frances were appointed as co-representatives of Frank's estate (the "Estate") on October 21, 2013.  In their roles as such, Judith and Frances directed the Estate to institute the present action against Wayne Ewing Films, Inc. ("Ewing Films"), a company run by Wayne in Colorado.  The Estate seeks repayment of a $100,000 note that was entered into between Frank and Ewing Films in May 2009, as amended in May 2011.

The case was filed in state court on August 29, 2014 and removed to this Court on October 7, 2014.  On October 27, 2014 Ewing Films filed its answer; a counterclaim against the Estate; and a third-party complaint against the Estate, Judith and Frances in their co-representative capacities, and Judith, Frances, and Robert Lang in their individual capacities.  Three motions to dismiss are pending, two of which concern whether the Court has personal jurisdiction over the three individual third-party defendants and one of which seeks dismissal of all claims brought against the Estate and against Judith and Frances in their co-representative capacities.  [ECF Nos. 35, 42, & 43].

## BACKGROUND

For purposes of these motions, the Court accepts as true all well-pleaded allegations in the counterclaim and in the third-party complaint. As noted above, this case arises out of a note entered into between Frank and Ewing Films in the amount of $100,000. The underlying complaint contains a short statement of the Estate's claims in four simple allegations followed by a prayer for judgment in an amount to be established (the $100,000 allegedly owed on the note) plus interest. In its Answer, Ewing Films denies that it owes this amount and asserts what it labels as 25 affirmative defenses. It also asserts a number of claims against the Estate and the third-party defendants. The following is a summary of the allegations giving rise to the counterclaim and the third-party complaint.

On May 26, 2009 Frank and Ewing Films entered into a contract documented by a note in the principal amount of $55,000 (the "Note"). Ewing Films was designated as the Note's Maker and Frank as its Holder. The Note was to be due and payable on May 26, 2011. According to its terms, should the Maker default on the repayment of the Note, "the Holder *may* issue a thirty (30) day default notice." [ECF No. 3 at 3] (emphasis added). Should the payment not occur within thirty days of the default notice the "Holder *may* institute legal resolution . . . ." *Id.* (emphasis added). The Note also included a provision entitled "Death of Holder," which stated, "Should the Holder's death occur before the date of repayment, the note shall be considered to have been paid in full and the Maker shall have no further obligation under the terms of this note." *Id.* The Note was signed by Wayne on behalf of Ewing Films and by Frank, with Judith acting as a witness to both parties' signatures.

On May 6, 2011 the Note was amended: the amount due was increased to $100,000 to become due on May 6, 2013. *Id.* at 4. All other terms remained the same. *See id.* At this time,

Frank and Judith lived in Florida while Wayne lived in Colorado, with Ewing Films having its principal place of business in Colorado. Neither party traveled out of state to enter into the Note, which was signed in each party's respective state of residence.

Ewing Films contends that Frank never intended for it to make payments on the Note, pointing to the Death of Holder provision in support. However, Judith – who is not a party to the Note – called Wayne in February 2013 to tell him that Ewing Films would have to make payment on the Note in May 2013 because "things are different now." Third Party Complaint [ECF No. 13] ¶¶ 24–26. After Wayne explained that Frank had told him otherwise, Judith stated that Frank "can't remember what he agreed to in the morning by the afternoon." *Id.* ¶ 27. This comment led to Wayne's questioning his father's competency. Frank was nearly 98 years old at the time.

On or around February 16, 2013 Wayne received a letter purportedly written by Frank detailing the contents of the telephone conversation between Wayne and Judith. Attached to the letter was a second amendment to the Note proposing to extend its term to February 2014 and abolishing the "Death of Holder" provision. [ECF No. 13-2]. A follow-up letter was sent on February 26, 2013, also purportedly drafted by Frank, explaining that "we" have not received the signed second amendment and asking for it to be returned to "us" by March 4, 2013. [ECF No. 13-3]. The letter states that if the second amendment is not received by that date, the offer of extension will be considered null and void with the full amount of the Note due on May 6, 2013. *Id.* Wayne never signed the second amendment to the Note.

In March 2013 Wayne initiated a guardianship proceeding in Florida state court. Three court-appointed examiners met with and evaluated Frank over the next month. All three examiners found that Frank was incapacitated, and each recommended plenary guardianship.

Third-Party Complaint ¶ 39; *see also* [ECF Nos. 13-4 through 13-6]. Notably, all three found that Frank was unable to make informed decisions about his right to contract, manage property, and sue. They also found that he was unable to assist in the defense of suits of any nature against him. *Id.* ¶ 41. Attorney Robert Lang of the firm Holland & Knight was present during these examinations and was made aware of the examiners' findings. Mr. Lang was one of Frank's private attorneys at the time, though it appears that it might have been Judith who asked him to be present during the examinations.

On May 14, 2013 Mr. Lang sent a letter to Ewing Films "on behalf of my client, Frank M. Ewing," advising the company that it was in default on the Note and demanding that Ewing Films pay the sum of $100,000 within thirty days. [ECF No. 13-11 at 1]. The letter continues, "Should your Company fail to satisfy the debt within this default period, my client reserves the right to pursue any legal remedies. Further, he will seek reimbursement of any fees or cost incurred to do so." *Id.* As noted by Ewing Films, this letter was sent just one month after Frank had been deemed incompetent by three state examiners, findings of which Mr. Lang knew or should have known. The third-party complaint specifically alleges that at the time the default notice was sent, Mr. Lang "knew that Frank Ewing suffered from dementia, was incapable of understanding the content and legal effect of the Default Notice and was legally and mentally incompetent to give Attorney Lang his approval, authorization and consent to send the Default Notice and file suit if Ewing Films did not comply with the payment demand." Third-Party Complaint ¶ 76.

Ewing Films goes on to allege that based on information and belief, Mr. Lang sent the default notice at the request of Judith and/or Frances, or with their authorization, consent, or ratification while knowing that Frank suffered from dementia and had been found incompetent.

5

*Id.* ¶ 77. Furthermore, the default notice was requested or authorized by Judith and/or Frances without Frank's knowledge, approval, or consent, or, in the alternative, Judith and/or Frances procured Frank's consent through coercion, concealment, or misrepresentation of facts. *Id.* ¶ 79.

Frank passed away on September 16, 2013, before the guardianship proceeding was completed. The Estate served its summons and state court complaint on Ewing Films one year later, on or about September 16, 2014.

In its response to the Estate's suit Ewing Films asserts a counterclaim against the Estate based upon four theories: (1) abuse of process, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) declaratory judgment. In addition, Ewing Films asserts third-party claims against Judith, Frances, and Mr. Lang individually for (1) intentional interference with contract and (2) abuse of process. Ewing Films also asserts a third party claim against the Estate; Judith and Frances as co-personal representatives of the Estate; and Judith, Frances, and Mr. Lang individually for civil conspiracy. Finally, Ewing Films asserts a third-party claim against Mr. Lang individually for negligence.

Judith, Frances, and Mr. Lang have moved to dismiss all claims brought against them individually for lack of personal jurisdiction. Furthermore, the Estate and Judith and Frances in their co-representative capacities have moved to dismiss all counterclaims and third-party claims against them for failure to state a claim upon which relief can be granted. The Court discusses each motion in turn.

## ANALYSIS

### I. PERSONAL JURISDCTION

All three individual third-party defendants contest this Court's exercise of jurisdiction over them. Judith and Mr. Lang are citizens of Florida, and Frances is a citizen of Maryland.

6

**A. <u>Legal Standard</u>.**

To establish personal jurisdiction over an out-of-state defendant, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1159 (10th Cir. 2010). Colorado's "long-arm" statute, C.R.S. § 13-1-124, has been interpreted to confer the maximum jurisdiction permitted by constitutional due process. *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Therefore, the Court need only determine whether the exercise of jurisdiction over the defendants comports with due process.

The Due Process Clause "operates to limit the power of a State to assert in personam jurisdiction over a nonresident defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984). In order to exercise jurisdiction, the out-of-state defendant must have "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash. Office of Unemployment Comp. and Placement*, 326 US. 310, 323 (1945). In all, the defendant's contacts with the forum must be such that it is foreseeable that the defendant could "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established in two ways. First, general jurisdiction exists where the defendant has "continuous and systematic" contacts with the forum state such that exercising personal jurisdiction is appropriate even if the cause of action does not arise out of those contacts. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). Second, specific jurisdiction exists where the cause of action is "related to" or "arises

out of" the defendant's activities within the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 (citation omitted). In such cases, jurisdiction is proper "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (emphasis in original) (citations omitted). Specific jurisdiction may be had over a nonresident defendant only where that defendant "purposefully directed" its actions at the forum state or "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (citations omitted). This inquiry "ensure[s] that an out-of state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

The burden of proof is on the plaintiff to establish minimum contacts. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Where the court rules on the motion based only on the documentary evidence before it, the plaintiff may meet its burden with a prima facie showing of personal jurisdiction. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1074 (10th Cir. 2004). "Once the plaintiff establishes minimum contacts, the defendant is responsible for demonstrating 'the presence of other considerations that render the exercise of jurisdiction unreasonable.'" *Alcohol Monitoring Sys., Inc. v. Actsoft, Inc.*, 682 F. Supp. 2d 1237, 1244–45 (D. Colo. 2010) (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). The Supreme Court has identified the following factors to be considered in this analysis: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the

shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 476–77. The burden is on the defendant to make a showing of unreasonableness.

### B. Application.

Ewing Films has put forward no argument in support of general jurisdiction over any of the individual third-party defendants. The Court therefore analyzes the allegations under specific jurisdiction analysis.

The claims brought against the three individual third-party defendants are all tort claims. A Colorado court has personal jurisdiction over an out-of-state party if that party committed a tort within the forum state or if the resulting injury occurs within Colorado. C.R.S. § 13-1-124(1)(b); *Vogan v. Cty. of San Diego*, 193 P.3d 336, 339 (Colo. App. 2008). When analyzing whether the resulting injury is targeted at or occurs within Colorado this Court applies the "effects" test from *Calder v. Jones*, 465 U.S. 783 (1984), as examined by the Tenth Circuit in *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008).

Under the "effects" test, a court may find that a nonresident defendant purposefully directed its activities at the forum state where there is evidence of (a) an intentional action that was (b) expressly aimed at the forum state with (c) knowledge that the brunt of the injury would be felt in the forum state. *See Dudnikov*, 514 F.3d at 1072. Accepting the well-pled allegations as true, the Court finds that Ewing Films has met its burden. It has sufficiently alleged that the individual third-party defendants committed intentional (tortious) acts expressly aimed at Colorado with the knowledge that the brunt of the injury would be felt in Colorado. Looking just to the intentional interference with contract and negligence claims, Ewing Films has sufficiently alleged that each individual took steps to ensure the drafting and sending of the default notice.

Each one also knew or should have known that because Ewing Films is based in Colorado, any injury it suffers is likely to be felt in Colorado. The only question, therefore, comes down to the "expressly aimed" prong.

In *Dudnikov*, the Tenth Circuit found that by e-mailing the e-commerce company eBay, Inc. for the purpose of removing another person's auction listing, the intent of the defendants was to "halt a Colorado-based sale by a Colorado resident." 514 F.3d at 1076. The act was expressly aimed at Colorado even though the e-mail was drafted by a company incorporated in Delaware with its principal place of business in Connecticut and sent to eBay's headquarters in California. What mattered to the Tenth Circuit was whether the defendants "*intended* their extra-forum conduct to reach and affect plaintiffs' business operations in Colorado." *Id.* (emphasis in original). There is no question that by causing the default notice to be sent and, in turn, (allegedly) improperly pursuing payment on the Note, the individual third-party defendants intended their conduct to reach and affect the business operations of Ewing Films here in Colorado.

The individual third-party defendants make no real claims to the contrary. For example, Mr. Lang focuses on the fact that he sent just one letter; according to him, one letter is not enough to establish jurisdiction. Yet if anything *Dudnikov* shows us that depending on the communication, sending just one letter can be sufficient. Mr. Lang argues otherwise, relying on cases with facts inapposite to the ones at hand. This is not a situation where a company sends a cease and desist letter in an effort to protect its intellectual property, or where an attorney sends an opinion letter to an out-of-state recipient only to be told he purposefully availed himself of the privilege of doing business in that State. Instead, this letter was allegedly sent without

authorization and with the intent of profiting from the misconduct by causing harm to a Colorado company. It is not merely a demand letter sent on behalf of a client.

Judith and Frances make even fewer arguments in support of dismissal. Nearly their entire motion focuses on whether jurisdiction can be exercised over them as individuals based solely on their actions as co-personal representatives of the Estate. However, the actions giving rise to jurisdiction in Colorado are those that they allegedly took in their individual capacities. For example, Ewing Films contends that in May 2013 Judith and Frances improperly directed Mr. Lang to send the default notice or coerced Frank to direct that it be sent while knowing that he did not have the capacity to do so. These tortious acts were taken prior to Frank's death and therefore before Judith and Frances became co-personal representatives of the Estate.

### Fair Play and Substantial Justice

Once minimum contacts have been established, the Court must consider whether exercising jurisdiction would offend traditional notions of fair play and substantial justice. As noted above, the burden is on the defendant to make this showing, focusing on the five *Burger King* factors listed above.

The individual third-party defendants have not met their burden. Mr. Lang focuses solely on the factors that would give rise to general jurisdiction in Colorado, arguing that because he does not have such significant connections with the forum State he should not be haled into court here. This argument misses the mark. Specific jurisdiction provides for the exercise of jurisdiction based on **minimum** contacts out of which the cause of action arose. Mr. Lang cannot successfully challenge the exercise of specific jurisdiction by recounting the reasons he would not be subject to general jurisdiction. Judith and Frances likewise do not meet their burden: their claim of unreasonableness comes down to the fact that neither of them lives in

11

Colorado or plans to visit such that defending an action here would be substantially burdensome. This position suffers from the same flaws as that taken by Mr. Lang. They also cursorily claim that jurisdiction over them is neither fair nor efficient and would not further any policies of Colorado. No arguments are made in support of these claims, which are simply rote recitations of the factors listed above.

### C. Conclusion.

The Court finds that Ewing Films has made a prima facie showing of minimum contacts. The individual third-party defendants have not established that the exercise of jurisdiction would offend traditional notions of fair play or substantial justice. Therefore their motions to dismiss for lack of personal jurisdiction are denied.

## II. SUFFICIENT PLEADINGS

The Estate, Judith in her capacity as co-personal representative of the Estate, and Frances in her capacity as co-personal representative of the estate (collectively the "Estate Defendants") have moved to dismiss this the claims asserted against them in the counterclaim and third-party complaints. The motion, filed pursuant to Fed. R. Civ. P. 12(b)(6), contends that Ewing Films has not sufficiently pled any of its claims against them to state a legally viable claim. To reiterate, Ewing Films brings the following claims against the Estate Defendants: (1) a counterclaim against the Estate for (a) abuse of process, (b) breach of contract, (c) breach of the implied covenant of good faith and fair dealing, and (d) declaratory judgment; and (2) a third-party complaint against the Estate, Judith and Frances as co-personal representatives of the Estate, and Judith, Frances, and Mr. Lang individually for civil conspiracy. The individual third-party defendants have not moved to dismiss the claims against them under Rule 12(b)(6). Therefore the Court only analyzes this motion with respect to the Estate Defendants.

**A. Legal Standard.**

In reviewing a motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

**B. Application.**

1. Counterclaims against the Estate.

*Abuse of Process*

The abuse of process tort provides a remedy in situations where litigation, though properly initiated, is "misused through an irregular, generally coercive act." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 66 (Colo. App. 2010), *as modified on denial of reh'g* (Feb. 24, 2011), *aff'd sub nom. Accident & Injury Med. Specialists, P.C. v. Mintz*, 2012 CO 50, 279 P.3d 658. To prevail on an abuse of process claim "a plaintiff must prove the defendant (1) had an ulterior purpose in using a judicial proceeding; (2) used the proceeding in an improper manner by taking a willful action that was improper in the proceeding's regular course; and (3) caused damage." *Id.*

While Ewing Films has alleged that the Estate had an ulterior motive in pursuing the underlying action, it has made no allegations with respect to the second prong. Specifically, no claim has been put forward (and no factual allegations made in support) that the Estate used the underlying proceeding in an improper manner by taking a willful action that was improper in the proceeding's regular course. Therefore, this cause of action is dismissed. Should Ewing Films later discover evidence showing that it has a plausible basis to plead the second element of the claim, it may move at that time for leave to amend the complaint.

*Breach of Contract*

Ewing Films argues that the Estate breached the terms of the Note by initiating the underlying action before sending a proper default notice and providing for an opportunity to cure. While the factual allegations might be true, the Court does not agree that they support a breach of contract claim. Specifically, the failure to satisfy these conditions precedent does not constitute a breach of a written term of the contract from which Ewing Films can collect damages. Instead, it serves as a potential defense to the underlying action, a legal argument that may prevent the Estate from collecting on the unpaid Note. This counterclaim is therefore dismissed.

*Breach of the Implied Covenant of Good Faith and Fair Dealing*

Ewing Films claims that the Estate breached the implied covenant of good faith and fair dealing in two ways. First, before his death Frank improperly drafted, sent, or caused to be sent a fraudulent and legally invalid default notice. Second, after his death the Estate wrongfully initiated litigation against Ewing Films even though the Note had been forgiven as a result of Frank's death. Beginning with the first argument, Ewing Films has consistently and repeatedly contended that Frank was incapacitated at the time the default notice was drafted and sent and

that, at most, Frank's role was that of a puppet.  There has been no claim made in the alternative that Frank was actually competent and improperly sought repayment of the Note.  Therefore, there is no plausible basis to contend that Frank himself breached the implied covenant of good faith and fair dealing.  With respect to the second argument, Ewing Films relies on a shaky premise for its claim: that the Note was automatically forgiven upon Frank's death.  This reading of the Note's terms is a strained one, though not entirely unfeasible.  However, now is not the proper time to make a legal determination as to the scope of the Death on Holder provision.  Presuming that Ewing Films can establish that the Note was automatically forgiven upon Frank's death and that the Estate pursued this litigation in bad faith, the claim can move forward.

*Declaratory Judgment*

Ewing Films seeks a declaration by the Court "as to the respective rights, duties and obligations owed to and by Ewing Films, Frank Ewing and the Estate under the Notes."  Third-Party Complaint ¶ 101.  The Estate asks the Court to dismiss this claim because it is subsumed by the competing breach of contract claims.  However, the Estate admits that it is within the Court's discretion whether to entertain a request for declaratory relief.  Practically speaking, there are at least two contract construction questions that the Court will have to resolve in order to proceed to adjudicate the remaining breach of contract claims: (1) which date constitutes the "date of repayment" with respect to the Death of Holder provision and (2) whether repayment can be sought without first providing a valid default notice and opportunity to cure.  Answering these questions before adjudicating the merits of the case would aid in its expedient resolution. *See Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963).  Therefore, the Court denies the motion to dismiss this cause of action.

2. <u>Third-Party Claim against the Estate Defendants</u>.

As noted above, the individual third-party defendants have not moved for dismissal of the claims against them under Rule 12(b)(6). Therefore, the Court addresses only the single third-party claim brought against the Estate Defendants: civil conspiracy.

To establish a claim for civil conspiracy, a plaintiff must show "that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result." *Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146 (Colo. App. 2003). The Estate Defendants seek dismissal of the civil conspiracy claim against them because most of the unlawful acts alleged in the third-party complaint occurred before the Estate existed and, in turn, before Judith and Frances were appointed as its co-personal representatives. Furthermore, they contend that the only acts to have allegedly taken place after Frank's death were not unlawful or in furtherance of an unlawful purpose.

The Court agrees that any acts preceding the Estate Defendants' existence cannot give rise to a civil conspiracy claim against them. (The acts can, however, continue to give rise to claims against the individual third-party defendants.) Nevertheless, at least one wrongful act has been alleged to have taken place after Frank's death and the appointment of the Estate's representatives: the Estate Defendants allegedly filed the present action in order to coerce and obtain leverage against Wayne (the individual) in the probate proceedings taking place in Florida. Assuming that this act is either unlawful or is lawful but done for an unlawful purpose (the Estate Defendants have not contended otherwise), its proximate result is injury to Ewing

Films, a company now forced to defend against a specious lawsuit. In turn, the civil conspiracy claim is sufficiently well-pled against the Estate Defendants such that it should not be dismissed at this time.

**ORDER**

For the foregoing reasons, the motions to dismiss for lack of personal jurisdiction [ECF Nos. 35 & 42] are DENIED and the motion to dismiss [ECF No. 43] is GRANTED IN PART and DENIED IN PART in a manner consistent with this opinion.

DATED this 10th day of April, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge